**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ESMERALDA VALENTIN SOTO,**<br><br>Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>Defendant. | Civil Action No. 18-14165 (ES)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is plaintiff Esmeralda Valentin Soto's appeal of Administrative Law Judge Brian LeCours's (the "ALJ") decision denying Plaintiff's application for supplemental social security income ("SSI") benefits based on her disability under Title XVI the Social Security Act (the "Act"), 42 U.S.C. §§ 1381 *et. seq.* (D.E. No. 1). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 9.1(f). The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons below, the Court AFFIRMS the Commissioner's decision.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Because the Court writes primarily for the benefit of the parties, only the essential facts are recounted here. On April 2, 2014, Plaintiff filed a claim for SSI benefits alleging disability beginning January 1, 2006, due to depression, sleep disorder, sinusitis, breathing problems, diabetes, and arthritis. (D.E. No. 5, Administrative Record ("R.") at 56). The claims were denied on June 3, 2015. (*Id.* at 70–85). On July 17, 2015, Plaintiff filed a written request for a hearing

before an ALJ, which was held on May 30, 2017. (*See id.* at 35–55, 100). The ALJ issued a decision on July 31, 2017, denying Plaintiff's application for SSI benefits on the grounds that Plaintiff had not been under a disability since the date her application was filed. (*Id*. at 18–29). Plaintiff sought review from the Appeals Counsel. (*Id.* 1–3). After the Appeal Counsel denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision.

Plaintiff filed the instant appeal on September 21, 2018. (D.E. No. 1). After numerous extensions, Plaintiff filed a brief in support of the instant appeal on January 14, 2020 (D.E. No. 18 ("Pl. Mov. Br.")); Defendant filed an opposition on February 28, 2020 (D.E. No. 19 ("Def. Opp. Br.")).

## II. LEGAL STANDARD

### A. Standard of Review

The Court applies plenary review of the ALJ's application of the law and reviews factual findings for "substantial evidence." *See* 42 U.S.C. § 405(g); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational

interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 283 (3d Cir. 2006). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit has noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

**B.   Determining Social Security Benefits**

To qualify for SSI benefits, the claimant must first establish that she is "disabled." 42 U.S.C. § 1381. "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter,* 247 F.3d 34, 38–39 (3d Cir.2001) (internal citations and quotations omitted). A claimant is disabled only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

3

medically acceptable clinical and laboratory diagnostic techniques." 42. U.S.C. § 423(d)(3).

The Secretary of Health and Human Services has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. *See* 20 C.F.R. § 416.920. If the determination at a particular step is dispositive of whether the plaintiff is or is not disabled, the inquiry ends. 20 C.F.R. § 416.920(a)(4). The burden rests on the plaintiff to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At step five, the burden shifts to the government. *Id.*

At step one, the plaintiff must demonstrate that she has not engaged in any substantial gainful activity since the onset date of his severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. 20 C.F.R. §§ 404.1572(a) & 416.972(a), (b). If an individual engages in substantial gainful activity, she is not disabled under the regulation, regardless of the severity of her impairment or other factors such as age, education, and work experience. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the plaintiff demonstrates that she has not engaged in substantial gainful activity, the analysis proceeds to step two.

At step two, the plaintiff must demonstrate that her medically determinable impairment or the combination of her impairments is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). An impairment or combination of impairments do not satisfy this threshold if medical and other evidence only establishes slight abnormalities which have no more than a minimal effect on an individual's ability to work. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

At step three, the ALJ must assess the medical evidence and determine whether the

plaintiff's sever impairment(s) (alone or in combination) meet or equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing"). *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).

If a plaintiff is not found to be disabled at step three, the analysis continues to step four. Before reaching step four, the ALJ must first determine a plaintiff's residual functional capacity ("RFC"). A plaintiff's RFC is the most that a plaintiff can do despite her limitations; all relevant evidence is considered. 20 C.F.R. § 416.945(a). At step four, the ALJ determines whether the plaintiff's RFC permits her to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). If the plaintiff lacks the RFC to perform any work she had done in the past, the analysis proceeds.

In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the plaintiff can perform based on her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v).

## III. DISCUSSION

### A. The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 2, 2014, the date Plaintiff filed her SSI benefits application. (R. at 20). At step two, the ALJ concluded that Plaintiff had the following severe impairments: diabetes mellitus with diabetic neuropathy, carpal tunnel syndrome, lumbar degenerative disc disease, asthma, affective disorders, post-traumatic stress disorder ("PTSD"), learning disorder, and personality disorder. (*Id.*). The ALJ concluded that Plaintiff's gastritis was not severe at step two as it "would not impose more than minimal work-related limitations of functioning." (*Id.*). At step three, the

5

ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the impairments listed by the regulations. (*Id.*).

At step four, the ALJ provided a lengthy analysis, concluding that Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. § 416.967(b), with the following exceptions:

> [S]he []can frequently balance; she can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs but is never able to climb ladders, ropes, and scaffolds; she must avoid concentrated exposure to vibration; must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust and gasses; must avoid concentrated exposure to hazardous conditions such as unprotected heights and dangerous machinery; the work must consist of unskilled tasks, work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time; and there can be occasional interaction with the general public, with co-workers and with supervisors.

(*Id.* at 22). The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*).

Finally, at step five and based on the record and the testimony of the vocational expert, the ALJ determined that Plaintiff was capable of making a successful adjustment to other work that exists in the significant numbers in the national economy. (*Id.* at 28). Accordingly, The ALJ found that Plaintiff was not disabled. (*Id.*).

### B. Step Three

Plaintiff argues that the ALJ's step-three analysis "cannot be deciphered, understood or reviewed." (*See* Pl. Mov. Br. at 22). With respect to Plaintiff's physical impairments, the ALJ's step-three analysis reads as follows:

> In making this decision, I have considered listings 1.00, 9.00, 11.00, and 12.00 of Appendix 1, Subpart P of Regulations No.4. The pertinent listings require specific findings, which are not present in

6

> this particular case. The medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.

(R. at 21). Plaintiff contends that the ALJ's decision: (i) failed to consider her severe impairments in combination (Pl. Mov. Br. at 13); (ii) failed to compare Plaintiff's asthma to any Listing, individually or in combination with any other impairments (*id.* at 15); (iii) improperly considered Listings 9.00 (endocrine disorders) in relation to Plaintiff's diabetes and diabetic neuropathy, when those conditions should have been compared with Listing 11.14 (peripheral neuropathy) (*id.* at 15–16), and (iv) generally failed to provide sufficient analyses for this Court "to apply its judicial review authority in order to determine whether [the statements quoted above were] based on substantial evidence" (*id.* at 14).

Assuming that Plaintiff is correct and that the ALJ should have performed a better analysis at the third step, Plaintiff fails to show how the outcome would have been different. "Ordinary harmless error review . . . is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x. 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Where, as here, a plaintiff alleges error by the ALJ, "the burden of showing harmfulness is normally on the party attacking the agency's determination." *See Shinseki*, 556 U.S. at 398. This means that Plaintiff must explain how she "might have prevailed at step three if the ALJ's analysis have been more thorough." *Holloman*, 639 F. App'x at 814. Specifically, Plaintiff must "affirmatively point[] to specific evidence that demonstrates [s]he should succeed at step three." *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016). Here, Plaintiff argues that the ALJ should have considered Listings 1.04, 3.03, and 11.14 in connection to her various physical impairments (Pl. Mov. Br. at 14–16), but she fails to identify any evidence of record to make some demonstration that Plaintiff's impairments, individually or in combination, met the

requirements of the Listings.[1] Thus, even the Court were to find that a portion of the ALJ's step-three analysis was deficient, Plaintiff nevertheless fails to meet her burden of presenting sufficient evidence that her medical problems were of listing severity such that the outcome would have been different if the ALJ had been more thorough. *Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 505 (3d Cir. 2005). Given that the ALJ's step-four evaluation is supported by substantial evidence, any error at step three was harmless.

With respect to Plaintiff's mental impairments, Plaintiff similarly argues that the ALJ's decision: (i) failed to combine the mental impairments (Pl. Mov. Br. at 16); (ii) failed to compare Plaintiff's learning disorder "with its designated listing at 12.02 for neurocognitive disorders affecting learning and memory" (*id.* at 17); (iii) failed to compare Plaintiff's PTSD with "its designated listing at 12.15 for trauma and stressor-related disorders" (*id.*); and (iv) improperly considered the opinion of Leslie Williams, Ph. D., a psychological consultant of the State agency, and failed to consider the relevant portions of the psychological evaluations performed by J. Theodore Brown, Jr., Ph. D. and Robert Rekker, Psy. D. (*id.* at 17–22). Accordingly, Plaintiff argues that the ALJ failed to sufficiently explain his analysis to permit meaningful review (*id.* at 17 & 22).

Plaintiff, again, fails demonstrate that how she was harmed by the ALJ's review at step-three. While Plaintiff identified additional Listings, as well as portions of Dr. Brown's and Dr. Rekker's psychological evaluations, which the ALJ allegedly should have considered but did not, Plaintiff's arguments suffer from the same deficiency noted above. Plaintiff fails to explain,

---

[1] In a footnote, Plaintiff discusses some evidence in the record regarding her peripheral neuropathy and carpal tunnel syndrome and argues that the ALJ failed to consider such evidence at step three. (Pl. Mov. Br. at 15–16 n. 2). Plaintiff goes on to argue that, considering her age, illiteracy, peripheral neuropathy, and carpal tunnel syndrome, "the combination directs a finding of disability and vocational rule 201.17 if [P]laintiff cannot perform light work but is limited to sedentary work." (*Id.*). Plaintiff's reference to the evidence in the record thus addresses the ALJ's RFC analysis, not a step three review.

based on the evidence of record, how she might have satisfied the criteria in the identified Listings and prevailed at step three. *See* 20 C.F.R. § 404.1525(d) ("To meet the requirement of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."); *Williams*, 970 F.2d at 1186 ("In order to qualify for benefits at step three of the sequential evaluation process, a claimant must match or equal a listed impairment.").

Moreover, the Court disagrees that the ALJ's step-three analysis as to Plaintiff's mental impairments deprived the Court of meaningful review. First, the Court does not agree that when the ALJ stated that "[b]ased upon the foregoing," he referred only to the paragraph immediately above, and nothing else. (*See* Pl. Mov. Br. at 18 ("But the 'foregoing' refers to the forms filled-out by a single DDS psychologist who neither treated nor examined the plaintiff and merely reviewed whatever psychological evidence was included in the record on the date of that review in April, 2015[.]")). The ALJ's decision clearly indicated that his decision was based on the four preceding paragraphs where he summarized and analyzed the following evidence in the record: (i) a psychological evaluation performed by Dr. Brown conducted on September 8, 2014 (R. at 377–381); (ii) a bio-psychological assessment conducted by the Catholic Charities on March 10, 2014 (*id.* at 343–59); (iii) a psychological evaluation conducted by Dr. Rekker on February 17, 2015 (*id.* at 468–70); (iv) treatment notes from Padmaja Annamaneni, M.D., Plaintiff's treating psychiatrist; and finally, (iv) the opinion of Dr. Williams dated April 20, 2015 (*id.* at 81–83). (*Id.* at 21–22). In fact, most quotes from Dr. Rekker's psychological evaluation, which Plaintiff argues were not considered, were specifically discussed in the ALJ's opinion. (*Cf.* Pl. Mov. Br. at 18 *with* R. at 21). Based on recited evidence, the ALJ noted the inconsistencies on Plaintiff's subjective report of her alcohol and drug use history, as well as whether she was hospitalized for psychiatric reasons. (R. at 21). The ALJ concluded that, while Plaintiff may not have "a conscious intention

9

to mislead," such inconsistencies suggested that the information provided by Plaintiff "generally may not be entirely reliable." (*Id.*). The ALJ further considered the relevant portions of the various physicians' reports, including treatment notes from Plaintiff's treating psychologist, who consistently given Plaintiff a global assessment of functioning ("GAF") score of 60. (*Id.*). The ALJ ultimately concluded that Plaintiff's mental impairments did not meet "the criteria of any listed impairment, individually or in combination." (R. 21–22). The Court thus finds that, contrary to Plaintiff's argument, the ALJ's decision as a whole, reflects "sufficient development of the record and explanation of findings" to allow meaningful review of the step three analysis. *See Burnett*, 220 F.3d at 119; *Jones*, 364 F.3d at 505.

### C. Steps Four

At step four, the ALJ determined that Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. § 416.967(b), with additional limitations. (R. at 22). Plaintiff argues that "the light work RFC [was] not based on substantial evidence" and that "the mental RFC [was] utterly without evidentiary foundation," because the RFC determination failed to take into account that Plaintiff "[could not] stand, walk[,] or balance herself without a cane, ha[d] physical limitations to both hands and both feet, and ha[d] a severely circumscribed mental capacity to focus, concentrate, remember, learn, understand or perform the simplest calculations or mental associations." (Pl. Mov. Br. at 28). Plaintiff further argues that the ALJ's decision did not address "why/what evidence show[ed] that plaintiff perform the exertional demands of light work" and "how long [could] plaintiff sit, stand and walk and how much [could] she lift and carry and for how long?" (Pl. Mov. Br. at 27). The Court disagrees.

When making an RFC determination, an ALJ is required to consider all evidence before him. *Burnett*, 220 F.3d at 121. However, an ALJ need not discuss in her opinion "every tidbit of

evidence included in the record," *Hur v. Barnhart*, 94 Fed. App'x. 130, 133 (3d Cir. 2004), so long as "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions, *Jones*, 364 F.3d at 505.

Here, with respect to Plaintiff's physical conditions, the ALJ first addressed Plaintiff's subjective report of symptoms presented at the hearing, where she stated that, *inter alia*, she was able to stand for about an hour and walk for about a block before she began to experience pain. (R. at 23). Plaintiff also testified that she was unable to sit for long periods or bend over and that she used a cane that was prescribed by her doctor a long time ago. (*Id.*). The ALJ then considered, *inter alia*, treatment records from Solania Rios, P.A., Plaintiff's treating physician assistant (R. 511–75); a podiatric evaluation conducted by Fuasto Ramos, D.P.M. on October 3, 2013 (368–76); an X-ray taken on December 11, 2013 (424–27); medical records from Plaintiff's treating physicians from approximately December 2013 to December 2014 (390–427); a consultative medical examination report from Fracky Merlin, M.D., dated October 15, 2014; an EMG nerve conduction study date February 19, 2015 (*id.* at 48185); and finally, a consultative medical examination report from Rashel Potashnik, M.D., (*id.* 471–77). Based on these clinical and diagnostic findings, the ALJ concluded that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." (*Id.* at 25). For example, the ALJ noted that the EMG nerve conduction study was "not suggestive of severe and disabling symptoms." (*Id.* at 24). Similarly, based on Tinel's test conducted by Dr. Potashnik, the ALJ concluded that Plaintiff's allegations of bilateral carpal tunnel were not supported by the record. (R. at 26).

In addition to the objective medical evidence, the ALJ also properly considered the medical opinions listed above and explained the weight he accorded to each. (*Id.* at 26–27); *see Fargnoli*

11

*v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence.") (citing *Burnett*, 220 F.3d at 121). Relevant here, the AJL gave "greater weight to the opinion of Mohammad Abbassi, M.D.," who specifically opined on "how long [could] plaintiff sit, stand and walk and how much [could] she lift and carry and for how long." (*See id.* at 26; *see also* Pl. Mov. Br. at 26). Indeed, the ALJ determined that Dr. Abbassi overstated Plaintiff's abilities, and based on "the evidence received at hearing," the ALJ found that "slightly greater limitations" were justified. (R. at 27). Plaintiff does not argue that the ALJ gave Dr. Abbassi's opinion improper weight. The Court thus finds that the ALJ's RFC determination regarding Plaintiff's physical impairments was supported by substantial evidence on the record as whole.

Contrary to Plaintiff's assertion that "the mental RFC is utterly without evidentiary foundation," the ALJ's RFC determination regarding Plaintiff's mental impairments was also supported by substantial evidence. The ALJ accorded great weight to the "well-established history of mental health treatment." (R. at 25); *see Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir 2000) ("A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."). The ALJ considered treatment notes from Dr. Annamaneni, Plaintiff's treating psychiatrist, whose notes dated as far back as April 2005 and primarily included medical records from 2014 to 2017. (R. at 25; *see also id.* at 428–67 & 489–509). As the ALJ correctly noted, Dr. Annamaneni "consistently [gave] Plaintiff a GAF score of 60, indicating only moderate limitation in social functioning." (*Id.* at 25; *see id.* at 431 (dated April 3, 2014), 435 (dated August 30, 2013); 439 (dated November 14,

2013); 443 (dated May 6, 2014); 447 (dated September 25, 2014); 492 (dated February 26, 2015); and 495 (dated July 10, 2015)).  The ALJ also considered a bio-psychological evaluation from March 2014 conducted by Catholic Charities and noted that this evaluation indicated that Plaintiff's "mental status examination was normal"; her memory was not impaired; she "was oriented to time, place, and person," and she "ha[d] good impulse control, judgment, insight, intellectual capacity, and motivation." (*Id.* at 25).  Notably, this bio-psychological evaluation also gave Plaintiff a GAF score of 60.  (*Id.*).  By comparison, the ALJ gave little weight to allegations Plaintiff provided during the consultative examinations before Dr. Brown and Dr. Rekkers, where she alleged that, for example, there were times where she did not recognize her husband.  (R. at 25).  Considering the remaining content in Dr. Brown's and Dr. Rekkers's reports, the ALJ found that they "did not provide a detailed assessment of [Plaintiff's] mental functioning" and gave those reports "some weight."  (*Id.* at 26).  Plaintiff argues that the ALJ "marginaliz[ed]" Dr. Brown's and Dr. Rekker's reports, which, according to Plaintiff, included "detailed assessments."  (Pl. Mov. Br. at 31).  This argument, again, invites the Court to reweigh the evidence the ALJ specifically considered and accorded less weight because the doctors' opinions were based on statements contradictory to "longitudinal medical evidence" from Plaintiff's treating psychiatrists.  The Court cannot reweigh evidence and does not do so.  *See Williams*, 970 F.2d at 1182; *Morales*, 225 F.3d at 317.  The ALJ provided a sufficient explanation, supported by the record, as to the weight he was attributing to the opinion evidence.  The Court thus finds no error in the ALJ's RFC determination regarding Plaintiff's mental impairments and finds that the ALJ's RFC determination to be supported by substantial evidence.

    **D.**    **Step Five**

Next, Plaintiff argues that "the ALJ's construction of hypothetical questioning to the VE did not include all of Plaintiff's credibly established mental limitations." (Pl. Mov. Br. at 29–33). At step three, the ALJ found that Plaintiff "had moderate limitation with understanding, remembering, and applying information; moderate difficulties with interacting with others; moderate difficulties with concentration, persistence, or maintaining pace; and mild limitations with adapting or managing herself." (R. at 22). It is unclear to the Court whether Plaintiff takes issue with all, or some, of these findings. Nowhere in Plaintiff's brief does she specify that certain mental limitations were improperly excluded when, at step four, the ALJ found that Plaintiff was able to perform "light work," which required that, *inter alia*, "the work must consist of unskilled tasks, work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time; and there can be occasional interaction with the general public, with co-workers and with supervisors." (*Id.* at 27). Instead, Plaintiff appears to argue that the hypothetical questions in this case are "virtually identical" to the ones the Third Circuit rejected in *Ramirez v. Barnhart*, where the court found that "a requirement that a job be limited to one or two step tasks . . . does not adequately encompass a finding that Ramirez often has deficiencies in concentration, persistence, or pace." 372 F.3d 546, 554 (3d Cir. 2004) (internal quotation marks and alteration omitted). Plaintiff also relies on *Tirone v. Astrue*, where the Court held that the ALJ's hypothetical question did not properly include the limitation that the plaintiff had at least a "moderate difficulty in sustaining concentration, persistence and pace." No. 08-4715, 2009, WL 2488153, at *7 (D.N.J. Aug. 11, 2009). The Court thus assumes that the medical limitations that the ALJ allegedly failed to include here was that Plaintiff had "moderate difficulties with concentration, persistence, or maintaining pace." Based on this assumption, the Court disagrees with Plaintiff.

Contrary to Plaintiff's apparent argument, *Ramirez* did not establish "a categorical

14

prohibition against using 'simple tasks' limitation after an ALJ has found that a claimant 'often' faces difficulties in 'concentration, persistence, or pace.'" *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 212 (3d Cir. 2019). "[A] 'simple tasks' limitation is acceptable after such a finding, as long as the ALJ offers a valid explanation for it." *Id.* As discussed above, the ALJ sufficiently explained why Plaintiff's "moderate difficulties with concentration, persistence, or maintaining pace" were not so significant such that she could still perform "unskilled tasks" requiring little or no judgment and with duties that can be learned on the job in a short period of time. In addition, the ALJ also noted that if Plaintiff were experiencing the degree of difficulty as she alleged, "one would reasonabl[y] expect to see that reflected in the bio-psychological evaluation or the treatment notes from Dr. Annamaneni." (R. at 25). Yet the bio-psychological evaluation stated that Plaintiff's "memory was not impaired" and she had "good impulse control, judgment, insight, intellectual capacity, and motivation." (*Id.*).

Finally, Plaintiff argues that the VE's testimony that Plaintiff could perform jobs as "assembler, electrical accessories I" and "document preparer, microfilming" is "in stark conflict with their description in the [Dictionary of Occupational Titles ("DOT")]." (Pl. Mov. Br. at 33–36). Plaintiff argues that DOT's description of "assembler, electrical accessories I" requires "detecting defects through testing," which is inconsistent with the RFC determination that Plaintiff could perform light work that, *inter alia*, requiring "little or no judgement" or involving "simple duties that can be learned on the job in a short period of time." (*Id.* at 34–35; R. at 27). Plaintiff further argues that the DOT's description of "document preparer, microfilming" is a sedentary job with language requirement beyond Plaintiff's level, which is inconsistent with requirements that Plaintiff could perform light work and was illiterate. (Pl. Mov. Br. at 33–34; *see* R. at 27 & 50–51).

15

The ALJ's decision at step five was based on the VE's testimony that Plaintiff could perform three types of jobs: "production assembler," DOT number 706.684-022; "assembler, electrical accessories I," DOT number 729.697-010; and "document preparer, microfilming," DOT number 249.587-018. (R. 28). Plaintiff mounts no challenge to the VE's testimony regarding the first job type, "production assembler." As the Commissioner correctly points out, the Commissioner need only identify one type of job existing in significant numbers in the national economy to meet his step-five burden. 20 C.F.R. § 416.966(b) (stating "if work that you can do does exist in the national economy, we will determine that you are not disabled"). Because Plaintiff fails to raise any conflict between the VE's testimony and the DOT regarding the job "production assembler," the ALJ's decision is affirmed on this basis.

The Court further finds that no inconsistency exists between the VE's testimony and the DOT's description regarding the job "assembler, electrical accessories I." The DOT lists the following qualification for this job: Strength Level: Light Work; General Educational Development ("GED") Level: Reasoning Development Level 2, Mathematical Development Level 1, and Language Development Level 2; and Specific Vocational Preparation ("SVP"): Level 2.[2] With respect to Plaintiff's argument that she could only do job requiring "little or no judgement" or involving "simple duties that can be learned on the job in a short period of time," the relevant qualifications are Reasoning Development and SVP. Specifically, jobs with a Reasoning Level 2, such as "assembler, electrical accessories I" at issue, require an employee to be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from

---

[2] ASSEMBLER, ELECTRICAL ACCESSORIES I (Code: 729.687-010), Dictionary of Occupational Titles, https://occupationalinfo.org/72/729687010.html.

16

standardized situations."[3] Jobs with a SVP level 2 means that a typical worker needs "[a]nything beyond short demonstration up to and including 1 month" to "learn the techniques, acquire the information, and develop the facility needed for average performance." Appx. C. Where, as here, plaintiffs were limited to simple, repetitive tasks, courts have repeated found that the plaintiffs are at least suited for jobs that require Reasoning Level 2. *Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014) (collecting cases). Some courts have even ruled that plaintiffs with a limitation of "simple, routine tasks/unskilled work" could perform a level 3 reasoning job. *Id.* (collecting cases and stating that "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work"). Similarly, where claimants, like Plaintiff, were limited to unskilled work, the suitable jobs are those with an SVP of 1 to 2. SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("[U]nskilled work corresponds to an SVP of 1–2"). Accordingly, the VE's testimony and his description of the job "assembler, electrical accessories I" is consistent with the description in the DOT and constitutes substantial evidence on which the ALJ based his decision at step five.[4]

## IV. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the Commissioner of Social Security. An appropriate Order accompanies this Opinion.

*s/Esther Salas*

---

[3] *Appendix C*, Dictionary of Occupational Titles, https://occupationalinfo.org/appendxc_1 html (hereinafter "Appx. C").

[4] The Court note that the remaining job discussed by the VE, "document preparer, microfilming," only has a Strength Level requirement of Sedentary Work, while the hypothetical questions constructed by the ALJ required the employee to "perform a range of light work." (R. at 49); DOCUMENT PREPARE, MICROFILMING (Code: 249.587-018), Dictionary of Occupational Titles, https://occupationalinfo.org/24/249587018 html. However, as discussed above, the Commissioner need only identify one type of job existing in significant numbers in the national economy to meet his step-five burden, which he had. The Court thus does not address Plaintiff's arguments regarding the job of "document preparer, microfilming."

17

**Esther Salas, U.S.D.J.**

Case 2:18-cv-14165-ES   Document 20   Filed 11/30/20   Page 18 of 18 PageID: 706